And the court will proceed to the second case of the day, Spierer v. Rossman. The case of the day is Spierer v. Rossman. It's hard to stop. Sorry. Thank you. There we go. You can bring it back up. Or whatever. Okay. Good morning, your honors. May it please the court. My name is Janine Carriage, and I represent Rob and Charlene Spierer, who are the parents of Lauren Elizabeth Spierer. Lauren was an Indiana University student who went missing in June of 2011. She was last known to be in the presence and care of the defendants in this case. The district court first allowed us to go forward on a dram shop claim, and then determined, without the opportunity for any discovery, that we lost on summary judgment. As this court has said in Farmer v. Brennan, even under an abusive discretion standard, the immediate grant of summary judgment can cross the line from the permissible to the impermissible. This is just such a case. In this case, we had a highly fact-intensive dram shop claim against the defendants. The defendants provided alcohol to Lauren when she was in a visibly intoxicated state to the point of physical incapacitation. The district court, without allowing us to conduct any discovery whatsoever on the issue of proximate cause, which is necessarily fact-intensive, ruled that we were not entitled to proceed to trial, and we weren't even entitled to conduct discovery. We've never had the opportunity to depose the defendants. We've never had the opportunity to depose critical eyewitnesses. We've never had any opportunity to develop our facts and our legal theories. That's a fundamental abusive discretion, and it's a misapplication of Celotex. In this case, the defendants won on summary judgment after failing on a 12v6 standard simply by pointing to our pleadings and then saying, under Celotex, you don't have any evidence to support your claims. But that's not what Celotex provides. Celotex is not a vehicle for defendants to come in and challenge plaintiffs before they've had the opportunity to conduct any discovery or develop a record to come forward with all the evidence at the very outset of their case. In fact, in Celotex, the Supreme Court specifically said that summary judgment should only be granted after adequate time for discovery. That did not occur here. The Supreme Court also said that where adequate time has not been granted, the proper relief is under Rule 56D to allow the plaintiffs an opportunity to develop a record. We sought relief under Rule 56D, and the district court denied it. The district court denied it on the basis that we had filed an affidavit instead of affirmatively seeking a continuance through a motion. Rule 56D expressly contemplates seeking relief through a showing, through an affidavit, or a declaration, and doesn't require us to file a formal motion. The district court looked at Federal Rule Civil Procedure 7, which discusses when a motion can be made in writing versus orally, and it also said under its own local Rule 7.1 that it can only act on a motion. But local rules can't be applied so hyper-technically to deprive a party of a fundamental right, the right to discovery and to trial. Is it your position that no matter what happened to her, that this discovery would – the judge sort of looked at it as a fishing expedition. And I just want to say, would this be something dispositive that would come from this, that regardless of what happened to her, whether there was some intervening cause or whatever, she just disappeared? Yes. And nobody – none of the defendants beyond Rosenbaum, he's the last one to see her, as she, I guess, stumbled down the road or wherever she was doing. What would discovery disclose? Because you can't – you're not going to get any discovery of what happened to her. Well, first of all, Your Honor, it would disclose what the defendants actually know. It's not in the record that the defendants don't know what happened to Lauren. We haven't deposed them. There have been no statements under oath at all in this case. So it's still before – just based on our pleadings alone, there is a factual dispute as to whether she did, in fact, walk away, if that's what happened to her. But the other issue is what we're required to show on proximate cause is that Lauren's intoxication was a proximate cause of her injuries. Her injury is what? Her disappearance and her presumed death. Disappearance is the injury. Obviously, that's – the judge was concerned with that because there had to be an intervening cause. Not necessarily. Well, they didn't find a deceased body laying around somewhere, which is surprising, frankly. Correct. Somebody should have called 911. Correct, Your Honor. And what was going on here is really pretty bad. That's absolutely. But at the same time, that judge was concerned because there's no – speculation was all that was left about what an intervening cause would be. Why she just disappears. Your Honor, the – on proximate cause, though, the risk of harm – the courts – Indiana courts have said that in a dram shop claim, the risk of harm from intoxication is there. That it's presumed. The question then becomes how foreseeable was that harm? The defendants didn't have to foresee the exact manner of harm. And the risk of harm to Lauren from her intoxication didn't end if that's when she left at 430 and walked down the road. The Supreme Court said in Rauch v. Hahn that the risk of harm only dissipates as her blood alcohol content level dissipates. So if she is still in a physically incapacitated state, the defendants absolutely could have foreseen that she wouldn't make it safely home. She didn't have her shoes. She didn't have her wallet. And according to their accounts, she was wandering around in an urban environment at 430 in the morning. The risk of harm is very foreseeable from that. But is – I guess what's the end result? There's a whole lot of things that are pretty obvious. It's pretty bad for everybody, including her. It's just obviously there are plenty of parents, everyone else is distressed that this even occurred. It had all kinds of wide publicity, et cetera. But the question then is I don't know if you or whatever named just a whole lot of people that needed to be deposed. Right. Anybody who was at the party. Right. Even the police who had an extensive investigation to find out what they found. Documents are there. It's a huge amount of discovery here. And I know the parents really aren't looking for money. They just love to know what really happened and who knows what. Of course, Your Honor, but to the scope of discovery, that should be dealt with through reducing the scope of discovery and the district court's discretion, not summarily dismissing the case altogether. And as to whether there was an intervening cause, an intervening cause doesn't necessarily always have to break the chain of causation. If it was foreseeable that Lauren in her state couldn't, for instance, spin off an attacker, then I would argue that her intoxication still is a proximate cause and the defendant still can be held liable. And at a minimum, again, we want to test and find out what they know. So does it, as my original question, doesn't matter what ultimately happened? That's correct. We know that she's disappeared. And that's an injury and that's what we've alleged. And the district court also properly held at the motion to dismiss stage that we can prove her death through circumstantial evidence. So obviously that's also an injury that we could establish. So, again, what is fundamentally unfair here is that the defendants were able to go forward without just holding up their hands and saying, tell us what happened, give us all of your evidence, before we'd had the opportunity to gather that evidence and to conduct discovery. And we asked the district court numerous times to let us. We, at every single opportunity, pressed forward for discovery from the very beginning of this case, and we were never given the opportunity to have that. It's an abuse of cell text. It goes against what this court has said in the Logan case, which we cite in our briefs, that even after cell text, a naked motion for summary judgment isn't enough. You can't just come forward as a defendant and just point to the plaintiffs and put the entire burden on them to come forward with every piece of evidence at the very beginning of the case. I'd also argue that we contended we did respond on the merits as well to summary judgment because we contended that the defendants hadn't met their initial burden of production. Again, all they've done is come forward and say, you don't know, therefore we win. But that burden of production, even after cell text, still has to have something to it. There has to be some burden that they have to meet before they ever shift that burden to us to come forward with affirmative evidence. Here there was no record, and there's been, of course, a lot of cases cited in everybody's briefs that you can file for summary judgment at any time, and that's true, of course, but that doesn't mean your summary judgment motion is successful. And I would point the court again back to cell text, where they say the proper move then is to give the party relief under Rule 5060. So what the district court could have done, Rule 5060, this court has said, should be liberally applied. It's supposed to protect plaintiffs from, in the words of cell text, being railroaded by premature motions for summary judgment. Instead it was used as a tool against us, a procedural trap. And that's not what this court has ever said, and that shouldn't be the law. It shouldn't be a tool to drive plaintiffs out of court when their claim has already been deemed legally sufficient. So the district court said that we erred in not filing an affirmative motion, basically that our only avenue for relief should be to seek a continuance. But, of course, the rule, the plain language of the rule, allows the court to just deny the motion to dismiss because, as a matter of law, there hasn't been adequate time for discovery. And that's obviously the case here where there's been no opportunity for discovery. The court also said that our Rule 5060 affidavit was insufficiently specific. However, again, we were at the absolute outset of the case. So our affidavit was designed to and did alert the court to the fact that there was no record, we'd had no discovery, and that that was through no fault of our own. The district court had stayed discovery entirely during the period that the motions to dismiss were pending. And then this motion for summary judgment came three weeks after the stay of discovery was lifted. So we'd had no meaningful opportunity to develop our case. And so the district judge thought you should have asked for an extension of time for discovery? Yes. Yes. But, again, that would then have deprived us from the opportunity to respond on the merits as well on the burden issue. So we feel that we were entitled to seek alternative grounds for relief. And the district court could have deferred ruling on the motion and ordered the parties to conduct discovery, or it could have denied that motion and let us all proceed under our case management plan, do all the discovery that all other litigants are afforded the opportunity to do, interrogatories, requests for production, non-party requests, depositions, all the things we outlined in our affidavit that we intended to do. We intended to conduct all the full discovery that we were entitled to. And if the district court thought we were seeking too much discovery, they can deal with that through the discovery process, not by ruling against us on the merits. Ms. Karras, wasn't there a point in time where Magistrate Judge Baker pressed Mr. Barkley on the issue of the need for additional discovery? Yes. And his response indicated that there was no need? He did say that, Your Honor. That actually came in the context of a hearing where we were imploring the district court to let us go forward and take discovery. The magistrate judge had stayed all discovery. Mr. Barkley's point in context was that the district court had sufficient grounds to just deny the motion for summary judgment. It didn't need discovery to deny that motion. It was so obviously premature and procedurally deficient that it could be denied. We didn't have to go through this extra procedural step. He later said, as I understand from the record, Mr. Barkley, he later said he did need more discovery for your summary judgment motion, the plaintiff's summary judgment motion. If we develop the record for one, yes. So I'm just at a little loss why he would have not sought, if Judge Baker was offering that opportunity, to take more discovery. Well, we had pending discovery that I think would have gone to some of the issues on proximate cause that was the subject of this summary judgment motion. But, again, I think Mr. Barkley's point was that this motion can just be denied on its face. We responded to it saying it's deficient, but we always had an alternative request under Rule 5060 for additional discovery. Mr. Barkley even had filed an affidavit with the court asking for that alternative relief. So just relying on that one statement would disregard. I don't want to take it out of context. Exactly. I appreciate your response. But it just seems to me it might have been an opportunity to get some discovery, even though you felt summary judgment could be defeated just on the pleadings at that point. Right. No, that's correct. And, again, we affirmatively sought discovery. We had a request from an affidavit from myself and Mr. Barkley on file asking for relief under 5060. And the district court judge, again, could have done any of the number of things allowed under Rule 5060. But what's not allowed, even under Celotex or this court's decision in Logan, is for the defendants to win just by coming forward and saying to us, you don't have enough evidence. Thank you. All right. Mr. Garrison. It pleases the court. I'm Greg Garrison here on behalf of appellee and defendant Michael Beth, the at this point forgotten defendant, who in the past 20 minutes his name has never been mentioned. In getting our heads around this unique lawsuit, we started with duty, which everybody does, and I finally got it through my own head. That's a step too late. You don't have a duty until you have a harm. And all the statutes and all the cases that anybody has read, we could never find a case on negligent disappearance. It's not compensable. It's not there. She just walked away. Matter of fact, the characterization out of counsel just now, staggering away or whatever, is not factual. It's not what they said in their own record. What we find ourselves, before we ever even get as far as duty and whether one was established or not, is what happened to Lauren Spear. They say she is presumed injured and dead of her injuries. I went all the way back to Black's Law Dictionary to take a look at the word presumption. And what I got out of my old Black's Law Dictionary was you've got to have some evidence to build the foundation for a presumption. Without that, you don't have that. And so before I even get moving here, I have to say to myself, before I get to duty, what am I defending? Michael Beth, if we get to duty, let me go through these things. I just want that at the outset that I've been involved in investigations like this for 40-some years. She's just gone. She's not injured. She's not dead. We don't know what happened to her. And unless somebody can show me, and I'm always happy to be taught, a case for negligent disappearance, Michael Beth's got no business in this lawsuit, and I think this lawsuit had no business being filed. Now, duty. Michael Beth lived in an apartment with Mr. Rossman. He had been at a party earlier in the evening where Ms. Spear was there, obviously intoxicated. Hours go by. He goes home. She's in his apartment, drunker still. In order to establish some kind of duty on Michael Beth's part, he's got to do more than just say, hey, Lauren, sleep it off on our couch. That's what he did. It takes deliberate, affirmative action. Cases that go all the way back to the 80s, I think in 1983, Plantech, which was an industrial accident case, made it very clear that even though in theory one can enter upon gratuitously helping somebody, then they've got to behave reasonably to do so. We can't find a court that ever accepted a plaintiff's invitation to find that duty and a breach of it. They'll talk about it. There's lots of elegant lists of checkmarks you've got to go through. But every time it happens, they say, but in this case, not enough. Michael Beth says, Lauren, sleep it off on my couch. There were two encounters. You weren't there with Beth? Early in the evening he saw her at a party. The second encounter is at his apartment where he invites her to sleep it off and then accompanies her to Mr. Rosenbaum's house. Now, is that after they went to that sports bar? Yes. Michael Beth has no part. He's not involved in going to a sports bar. He just saw her at this party early on, went about his business, writing a paper actually, came back and found her at his house at 3 o'clock in the morning and then accompanied her to Mr. Rosenbaum's place. Not to hers. No. Now, that's interesting because they make the allegation that she wanted to go home. Well, she messed not up. There's no allegation that she was handcuffed and dragged off to Rosenbaum's house. She obviously went willingly. It's an easy inference from the evidence. So Beth brought her back to Rosenbaum's party. Beth walked her back there. Nobody drove, nobody had a car. It's after she refused to sleep on the couch. Correct. Now, with all that said, we have evidence in cases just legion where the people did an awful lot more than that and a court said you still didn't assume anything. There's one case. Lather, I believe it is. Guy gets super drunked up. They get in fights over whether he's going to drive or not. They take his keys, his fellow compatriots and all this stuff. Eventually he goes out, T-bones the state trooper and kills him. All that they did was still not enough by way of affirmative, deliberate action to make them liable. And the cases go on and on and on. Ledbetter's one of them. Lather's another one. And usually we have a drunk, an actor, us, and then somebody that got hurt. Well, three and one are the same person in this case. The alcohol-inebriated person, Lauren Speer, is also the person that they claim got hurt. Back again to what's your proof? They don't have any. In the end, Michael Beth is still here. And Judge Pratt was dead on. And looking at this thing and recognizing there was nothing to do. Now, I've run myself out of time. I think that it's clear from the record and from this legion of cases back in the 80s that there's nothing here and that Michael Beth deserves to be out of this lawsuit. Thank you. Thank you, Mr. Garrison. Mr. Trimble. I may have to hike this up again. I would think so. That's the wrong direction. I'm not sure. You can argue for your knees if you want to. I'm not sure how to raise it. I can figure out how to lower it. There we go. May it please the court, counsel. There's clearly a fundamental disagreement among the parties as to how this case was conducted at the trial court stage. Judge Walton Pratt, in her order granting summary judgment, said the Speers knew they did not have sufficient facts to support their opposition the day the motion was filed. She also said they had ample opportunity to conduct discovery. They chose not to do so. That was her statement in her order. She foreshadowed the motion for summary judgment in her ruling on the motion to dismiss when she saved the proximate cause issue for another day. She found that the complaint was facially adequate, but she suggested and I think invited the motion for summary judgment when she indicated that the approximate cause might not stand up under a summary judgment scrutiny. It's the approximate cause of the disappearance? Yes, Your Honor. The approximate cause of whatever happened to Lauren Speer. That seems to be where there seems to be a mix-up here, at least in my mind, about what this discovery would be about. If there could be an interim liability of some kind before she disappeared. I don't think there's any cause of action for any interim liability. I mean, she was brought back to Mr. Rosenbaum's apartment around 4.30 in the morning. He made a couple of efforts to have friends come get her. She wanted to go home, and she left, and he saw her leaving heading in the direction of her house, and we don't know what happened to her after that. We don't know whether her intoxication was a proximate cause of what happened here, whether there was an efficient intervening cause. It's pure speculation, and Indiana law is very clear that the mere fact that an accident or something happens is not evidence of negligence, and proximate cause can't be based on speculation or conjecture. And frankly, the way we posited this motion, we think is absolutely consistent with trial rule 56C1B, as well as the advisory committee notes from 2010, which do indicate that it is appropriate under certain circumstances for a party to simply point out to the court that there is an element missing, and that is what happened here. This may be a unique case. With the disappearance of Lauren Speer, there was no dispute among the parties on the proximate cause issue. There was no evidence. It simply wasn't there. And I would point out to the court in their appeal, the Speers don't appeal the proximate cause issue. They don't appeal the court's finding that there was an absence of proximate cause here. They appeal the court's ruling on the summary judgment before they contend they had adequate discovery, but they've not challenged the court's ruling on any of the proximate cause issues. This is a procedural issue then? I think from their point of view, they've raised a procedural issue, and I do think procedurally we did really what we believed we were invited to do. And this is one of those cases where we really hardly had to point out to the court  and the court's ruling then really did invite us, we believe, to file a motion for summary judgment. And this is truly one of those cases where you're talking about proving a negative where there wasn't anything that we could have produced in the way of interrogatories, other information in the record, because nobody knew what happened to Lauren Speer. I mean, the answer to what happened simply wasn't going to be answered. Well, they seem to want more information about other people at the party, who else might have known her or knew what her condition was or something like that. As it is, we just have the three defendants giving whatever they're doing. We have the allegations in their complaint, Your Honor, which are fairly detailed, which we have accepted as true for purposes of this motion. They would like to back away from that and say to you that those are unsworn statements based on their investigation and that we can't now rely upon them as true for purposes of summary judgment. We think the law would disagree with that point of view. Was this an effective judgment on the pleadings? No, Your Honor. I think as a practical matter, it is a motion for summary judgment because we are simply pointing to an element that was missing and we properly brought it before the court. That shifted the burden for the plaintiffs to bring forward some evidence that there was an issue. How did you designate the motion? Pardon me? How did you designate the motion? It was a motion for summary judgment, Your Honor. Not judgment on the pleadings? No, Your Honor. It was a motion for summary judgment. I do think that Rule 56D is an essential thing to look at here because the Spears in their appeal say issue number two specifically, and I'm quoting, did the court err in granting the summary judgment before discovery and when the Spears clearly demonstrated, and I emphasize clearly demonstrated, the need for additional discovery. That is not what happened here. That is truly not what happened here. We filed the motion for summary judgment. They responded to it. There was a vague affidavit saying there's been no discovery. There was no motion. There was no plea to withhold ruling any of the things that are required under Rule 56D. They responded. We replied. Then there's a motion for a supplemental, but, again, it's not a motion. It's just a supplemental affidavit. The first affidavit is vague. The second affidavit is vague. Those affidavits don't tell the court what they expect to get out of discovery. The court did note that the court believed it was a fishing expedition. There's this hearing on May 28th, Your Honor, and I don't think it was taken out of context at all. There was a very pointed discussion by a magistrate, who I think was trying to manage this case very well, who said you need to respond to this motion. No, Your Honor, we don't see cell attacks that way. Were there any criminal activity involved in investigations, state or federal? This case was as thoroughly investigated as any disappearance that you can imagine, and you'll see from the record there's discussion. By whom? By the Indiana State Police, the Bloomington Police. I believe the FBI was involved, private investigators. The record reflects the fact that my client gave multiple statements, sat down with the spearhead attorneys. No action by any of the federal or state authorities? No, no. I mean, to this day, we don't know a thing about what happened. But Magistrate Baker, in his efforts, I think tried very hard to get the point across. You can't just stand on the response you've made. You've got to do something. And Jason Barkley repeatedly said, we don't need discovery to respond to the summary judgment. We don't need discovery. I don't know. Well, you say he just affirmatively indicated he's not going to ask for an extension of time for discovery. And they didn't. Well, I know they didn't, but that was not something that was an accident. In our view, no, Your Honor. And this is reviewable for abuse of discretion. So you have a trial judge who has a record in front of her where the party has not filed a motion under Rule 56D, and in hearings and in subsequent orders, it is noted that no discovery was needed to respond to the summary judgment. And so to come to this court and to suggest that they were deprived of discovery, they didn't ask for it to respond to our summary judgment. They did serve lots of subpoenas for all kinds of things, and what the court characterized, the magistrate characterized as a fishing expedition. But in terms of the specificity required under Rule 56D to inform the court to allow them to respond to our motion for summary judgment, that simply didn't happen. And so if you review this on the basis of an abuse of discretion, it's not an abuse of discretion. And furthermore, there's ample case law from the Seventh Circuit that says that it is not an abuse of discretion for a court to go ahead and grant a motion for summary judgment when the non-moving party has failed to avail themselves of the remedies under Rule 56D. So we believe that the court's ruling is consistent with Celotax. It's consistent with Rule 56C1B. Mr. Trimble, on that May 28th was the hearing. Yes, sir. And then on the 3rd of June, as I understand it, the district court entered an order continuing the stay of discovery. Yes, Your Honor, the magistrate Baker did. Yeah. And then on September 30th, we have the denial of the motion to supplement their response to your motions for summary judgment. Was there any court action between the June 3rd and the September 30th? None, Your Honor. No request for a renewed request for discovery? Not that I recall. The court ruled on everything simultaneously in September with the motion for summary judgment. So, no, there was radio silence in that intervening time. Would this be the time when these other, you said something about a private investigator and other people were looking around? Judge, that had all occurred prior to the filing of the lawsuit. Oh, did it? The lawsuit was filed two days before the statute of limitations ran. So what we're talking about in 2014, in May of 2014 is three years after the disappearance. Okay. I'd like to touch briefly on the loss of services claim that has been made. Under Indiana law, a loss of services claim is a property claim. It is not a claim for loss of love and companionship or society. And in our view, solid Indiana case law dictates that a minor child reaches the age of majority in Indiana at the age of 18. There are numerous statutes that deal with the right to vote, consent to medical treatment, marriage, executing a will, serving as a personal representative, entering into a contract, that the age of majority in Indiana is 18. The only difference from that is the wrongful death statute, which is in derogation of the law and has to be strictly construed, and it does not change the common law. The wrongful death statute for a child allows a claim to be brought until the age of 23 if the child is still in college. Is that an adult child? Is that what they refer to? Well, they refer to her in the complaint as an adult child, which is another reason we do. She was, what, 20? She was 20, yes, Your Honor, almost 21, I believe. But, yes, she was 20. And so we believe that while Indiana may recognize a claim for parents for loss of services, it's a claim that expires upon the age of majority when a child would reach the age of 18. Mr. Garrison has reflected on this duty-to-assist issue, and we would simply emphasize that the approximate cause issue that we've raised with respect to the Dramshock claim and the negligence per se claim also pertains equally to the failure-to-assist claim. We agree that there's no duty to assist. In fact, in the Smith v. Delta Tau Delta case, the court went on to say that in order for a duty to be assumed voluntarily, gratuitously, there has to be proof that the person who assumed it actually substituted themselves for the individual entirely in undertaking an effort to keep them safe, that that's necessary in order for there to be an assumption of duty. There simply was no evidence before the court of an assumption of duty, so we do think that the court's ruling was correct on that issue as well. Was there any Dramshock issue with the sports bar? To my knowledge, Your Honor, unless something occurred that we're not aware of, no. Because they have rules, a liquor license and all that sort of thing about intervening, not serving more liquor to someone who's obviously drunk. I know a lot about that, Your Honor. That's the only reason I ask, because that's usually where Dramshock comes from. It's not in the record, and so what I know about that probably would not be appropriate for me to mention, but as far as I'm aware, there was no claim against the establishment. In closing, as my time is running out, I'd like to say we understand this is a sad case and a very difficult case for Judge Walton Pratt. We believe that we properly supported our motion for summary judgment in compliance with that this is a unique and rare case where there is one fundamental issue that is perfectly obvious to everyone. There was no effort here under 56D to seek additional discovery. The court found that in the face of statements that they did not need discovery to respond to our summary judgment. That can't be an abuse of discretion. We feel like Judge Walton Pratt did an excellent job in her opinion of spelling out specifically what she was thinking on each point and that as tough and as sad as this case is, she made a proper ruling, and we ask you to affirm the summary judgment. I have one other question. Yes, Your Honor. A very simple one. You mentioned earlier that Rosenbaum saw her, and you said something about heading back to her home. I don't know the street. Yes, Your Honor. The allegation in the complaint was simply that when he last saw her, she was walking in the direction of her apartment. All right. There's nothing in the record that she was stumbling or staggering. All right. I guess I said that. Okay. Thank you. Thank you, Mr. Trimble. Ms. Karrasch? I'd like to first address the point of our allegation that Rosenbaum last saw Lauren headed towards her home. We also allege right after that that a video camera that would have captured her on her route home, very close to Mr. Rosenbaum's home, did not find her there. So even on our complaint, which they've said they've accepted all the allegations of true for purposes of summary judgment, there are disputed issues of fact as to what happened to Lauren. And I'd also point out that everything Mr. Trimble said with regard to what Mr. Rosenbaum knew, no one knows what happened to Lauren, none of that is in the record. There is no deposition from any of these defendants, no statements under oath. They've at every point tried and succeeded in staying discovery and never answering questions and telling us what they know. And that's one fundamental thing that we're entitled to. Once we survive the motion-to-dismiss stage, we're entitled to discovery under Rule 26, and we're entitled to liberal broad discovery. Exactly what discovery post the motion to dismiss did you engage in? We served interrogatories and requests for production on the defendants. We were actively trying to schedule their depositions. With the agreement of counsel, we scheduled the depositions of ten eyewitnesses who were all at the party and saw Lauren and could have testified as to the amount of alcohol she consumed, which she visibly intoxicated, and what alcohol was being furnished by the defendants, and what her physical state was. We've alleged in our complaint that she was physically incapacitated. Was anyone deposed? No. It was stayed before we had the opportunity to ever do that. We also had served non-party subpoenas on Indian University, the defendants to try to get the key card access in between the buildings because they were traveling in between buildings to see where people were when to try to establish a timeline. We sought any videotape evidence that we might be able to find from surveillance cameras. But before we obtained any of that, the district court stayed discovery. We had all of these requests pending, and this was part of the subject of that May 28th hearing, where we were affirmatively saying to the court, don't stay discovery. Let us finally go ahead with our claim. Remember, Lauren's been missing since 2011. These are college students. They've moved all over the country. They've started careers. Memories are fading. At all points we've said this is critical, we need this evidence, and we need it in the best form that we can possibly get it before we lose witnesses, before they lose their memories. We've never had the opportunity to do that. There's not a case in anyone's brief where a motion for summary judgment was granted without adequate time for discovery. And that, of course, depends on the case. But here we have fact-intensive claims. We have questions of fact. We need to develop a record on those issues. And we asked the court to find that this was an abuse of discretion by the district court. Once we were entitled to get in the courthouse door, we should be afforded all the opportunities under the Federal Rules of Civil Procedure to build and develop our case. Even in Celotex, discovery had been conducted in that case, and the court specifically warned against granting premature motions for summary judgment. That is not what Celotex was designed to do, and it's contrary to this court's ruling in Logan. In Logan, actually, the court relied on an 11th Circuit case, Clark, which we also cite in our briefs, where they said, Celotex is an unusual case where you'll be able to go forward and everybody's engaged in discovery. You can say even with all of this, you fail on an essential element of your claim. It didn't say you can go in, challenge a plaintiff to come forward with all their evidence at the very outset. Was there something that Mr. Truman brought up about the magistrate judge strongly suggesting certain things that the attorneys decided not to do? In terms of seeking an extension? Well, I'm not sure in terms of what. He was talking about what the magistrate judge was strongly implying. They needed to do something more, and they were saying no they didn't. What the magistrate judge said we did wrong was file a Rule 56D affidavit explaining why we hadn't been able to obtain discovery and asking the motion to be denied or deferred. He said a motion for the extension of time. Correct. He thought we should have moved for a continuance. But Rule 56D itself says you show through an affidavit or a declaration, and it says the court can defer or deny the motion based on that. And we submit that as a matter of law here and under Celotex, there wasn't adequate time for discovery. Mr. Trumbull said we hadn't sought relief under Rule 56D. We had at every possible stage. Thank you. Thank you, Ms. Gards. Thanks to all counsel. The case is taken under advisement.